**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Robert Joseph WALSH, Defendant and Appellant.**

No. 13035.

Supreme Court of South Dakota.

Argued Oct. 23, 1980.

Decided May 6, 1981.

Dennis R. Holmes, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Timothy J. McGreevy of Dana, Golden, Moore & Rasmussen, Sioux Falls, for defendant and appellant.

DUNN, Justice (on reassignment).

Robert Joseph Walsh (appellant) appeals from a judgment and sentence entered upon a jury verdict finding him guilty of aggravated assault and of being a habitual criminal. We reverse and remand.

This action arises from an apparent beating on August 9, 1979, of one Harold Rooney, a party described as a member of a

group of local winos. Rooney was severely beaten, resulting in brain damage and requiring his being institutionalized in the South Dakota Human Services Center at Yankton. Appellant was charged with and convicted of aggravated assault, and also of being an habitual criminal, in connection with this beating. The underlying facts shall be discussed in disposing of the issues raised on appeal.

The first issue raised by appellant is that statements made by him to Sioux Falls Police Officers on the morning of August 10, 1979, are inadmissible because they were the result of custodial interrogation based upon less than probable cause for arrest, thereby violating the Fourth Amendment of the United States Constitution. The State concedes that probable cause to arrest appellant did not exist until approximately 9:30 a. m. on August 10, but contends that appellant was properly taken into protective custody on August 9 for detoxification and therefore was not illegally seized and that even if appellant was illegally seized or detained, the detention was so slight an intrusion that it does not justify exclusion of appellant's statements.

We first consider whether appellant was properly taken into protective custody for detoxification. SDCL 34–20A–55 provides:

A person who appears to be intoxicated in a public place and to be in need of help, may be assisted to his home, or may be taken into protective custody by the police and taken forthwith to an approved public treatment facility. If no approved public treatment facility is readily available he shall be taken to an emergency medical service which shall include any facility with the capability to provide basic health care or which is customarily used for incapacitated persons including a jail which complies with the rules promulgated by the board of charities and corrections pursuant to § 24–11–23.

A taking into protective custody for detoxification is not an arrest. SDCL 34–20A–56.

The evidence indicates that Officer David Blades, who was very much involved in investigating the Rooney assault, had been called to the scene where the victim Rooney was found. Blades identified Rooney as one of a group of "winos" that frequented the area. Blades had been directed to help form a "perimeter" around the crime area to find possible suspects and prevent unauthorized persons from entering the area.

As Blades was returning from the hospital, after picking up Rooney's clothing, he spotted appellant walking down the street. Blades recalled that he had seen Rooney and appellant together on prior occasions. He stopped his patrol car and questioned appellant about Rooney. After this questioning Blades decided to bring appellant in ostensibly for detoxification, "as he was intoxicated and had no place to go." He manacled appellant's hands and proceeded to the Minnehaha County Jail.

Officer Blades, upon noting some stains on appellant's shirt, immediately called in two detectives who were investigating the Rooney beating. The detectives took appellant to a conference room in the jail and questioned him for two or three hours and learned that appellant and some others had been drinking with Rooney earlier that day at the location where Rooney was later found. About 11:30 p. m. appellant was read his *Miranda* rights and voluntarily consented to have some blood withdrawn at a hospital. Finally, after four and one-half hours, appellant was booked into the jail and placed in a detoxification cell. Under normal detoxification procedures (and it was conceded that appellant was a normal case), appellant should have been released at 6:30 a. m. on August 10. Instead, he was held for further investigation by the detectives, beginning at 9:30 a. m. on August 10, when he finally made incriminating statements, which were later used at the trial where appellant was convicted. Then he was arrested and held for the assault on Rooney.

The trial court found that appellant was taken into custody for the purpose of detoxification. The trial court noted that appellant was stopped by Blades because he was intoxicated and not because he was a sus-

pect and concluded that appellant "was legally being held in police custody [at the Public Safety Building] . . . for purposes of detoxification and not on any criminal charges."

It is submitted that in light of the overwhelming evidence to the contrary, the trial court's finding that "appellant was legally being held in police custody for purposes of detoxification and not on any criminal charge," is clearly and palpably erroneous. If we accept all of the statements of Blades, we still cannot escape the plain facts that appellant was not booked for detoxification until after he had been questioned for three hours on the assault, and that he was not released from detoxification at the proper time because he was being held for further investigation on the criminal charge.

It is somewhat puzzling that the trial court suppressed the statements obtained from the interrogation on August 9 but refused to suppress the statements obtained on August 10. The State, conceding that it had no probable cause to arrest on August 9, claims it finally had probable cause to arrest appellant from the investigations and questioning that had taken place on August 9, while appellant was being held for detox-ification. The questioning on both August 9 and 10 was carried on at a time when appellant was involuntarily detained; when the State had no probable cause to arrest in the first instance; and lacks clear indication of any attenuation of the primary taint.*

We find the following language from *State v. Weekes*, Minn., 268 N.W.2d 705, 710–711 (1978), to be most persuasive:

> · " * * * Assuming [Officer Blades'] utmost good faith in his judgment that defendant should be confined for the 'protection' of himself and others or held for 'investigation,' it is nevertheless clear that defendant was taken into custody and confined without a warrant and without probable cause in violation of Fourth Amendment guarantees, for absent probable cause there is not and never has been any lawful basis for 'holding' a person 'for investigation' or 'on suspicion.' *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *State v. Mitchell*, 285 Minn. 153, 172 N.W.2d 66 (1969). Indeed this is the very essence of the protection afforded by the Fourth Amendment freedom of '[t]he right of the people to be secure in their persons' against unreasonable seizures of both

---

\* Even if we were predisposed to find that appellant was properly detained for detoxification (which we are not so inclined to do), we would still find that he was illegally seized beyond the normal time period for detoxification; in this case beyond 6:30 a. m., August 10. Then we would be presented with the question of whether that illegal detention required suppression of the incriminating statements.

> [S]everal factors to be considered "in determining whether the confession is obtained by exploitation of an illegal arrest [are] [: t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct . . . ." ([:t] in original)

*Dunaway v. New York*, 442 U.S. 200 at 218, 99 S.Ct. 2248 at 2259, 60 L.Ed.2d 824 at 839 (1979), quoting from *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Here, all of these factors militate in favor of suppressing the August 10 statements. The temporal proximity of appellant's statements that were made within three hours of this illegal 6:30 a. m. seizure, indicates they should be suppressed.

As for the second factor of intervening circumstances, "[n]o intervening circumstances occurred in this case which are generally recognized as sufficient to purge the taint of an illegal arrest. There was no appearance before a magistrate; there was no release and subsequent voluntary return to confess; [and] there was no consultation with an attorney." *State v. Weekes*, Minn., 268 N.W.2d 705, 709 (1978) (footnotes omitted).

Finally, as for the factor of the flagrancy of the official misconduct; the State concedes that there was a total lack of any probable cause to arrest appellant until the morning of August 10; however, appellant was subjected to several hours of interrogation without probable cause, a substantial part of which was done without even giving a *Miranda* warning to appellant. We fail to see how an involuntary detention, with subsequent interrogation, without a reading of Miranda rights, by trained and experienced police detectives, can be deemed anything but flagrant misconduct.

There is simply nothing to indicate that the taint of the original arrest has been purged; regardless of whether appellant was legally or illegally detained for detoxification.

physical and verbal evidence which may be used in a criminal prosecution. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)."

... [As] Mr. Justice Powell in his concurring opinion in *Brown v. Illinois*, 422 U.S. 590, 610, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416, 431 ... state[s]:

"I would require the clearest indication of attenuation in cases in which official conduct was flagrantly abusive of Fourth Amendment rights. If, for example, the factors relied on by the police in determining to make the arrest were so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or if the evidence clearly suggested that the arrest was effectuated as a pretext for collateral objectives, * * * or the physical circumstances of the arrest unnecessarily intrusive on personal privacy, I would consider the equalizing potential of *Miranda* warnings rarely sufficient to dissipate the taint. In such cases the deterrent value of the exclusionary rule is most likely to be effective, and the corresponding mandate to preserve judicial integrity, * * * most clearly demands that the fruits of official misconduct be denied. I thus would require some demonstrably effective break in the chain of events leading from the illegal arrest to the statement, such as actual consultation with counsel or the accused's presentation before a magistrate for a determination of probable cause, before the taint can be deemed removed * * *."

. . . .

One major purpose for the exclusionary rule is deterrence of illegal police conduct by removing incentives to the illegality. *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). Were we to affirm the trial court the effect would be to render admissible any confession made after an illegal detention where police conduct falls short of overt physical brutality. . . . Affirmance would serve to encourage police disregard of constitutional procedures, to encourage exploitation of illegal confinements, and to increase public cynicism about law enforcement agencies.

Law and order require the police as well as citizens to refrain from illegal activities. While we in no way condone the acts committed by defendant, the police failure to abide by constitutional restraints mandates a reversal in this case. The confession must be excluded in any retrial.

■ There is no clear indication of any attenuation of the taint of the illegal arrest. Rather, the seizure, and subsequent interrogation, without probable cause, clearly indicates a collateral objective. The police cannot be allowed to pull themselves up by their own bootstraps in an effort to bolster "probable cause" by obtaining admissions from a defendant after he has been illegally taken into custody. When a defendant is taken into protective custody for detoxification, he should be detoxified and released. This humane statute should not be used as a device for picking up possible suspects without probable cause and subjecting them to interrogation on a felony charge.

We, therefore, reverse and remand for a new trial excluding all evidence illegally obtained in both the August 9 and August 10 interrogations.

As we are reversing the underlying conviction, those issues relating to the habitual criminal charge are rendered moot.

MORGAN and HENDERSON, JJ., concur.

WOLLMAN, C. J., and FOSHEIM, J., dissent.

WOLLMAN, Chief Justice (dissenting).

I would affirm the judgment of conviction.

At approximately 6:30 p. m. on August 9, 1979, members of the Sioux Falls Police Department arrived at the scene of an apparent beating that occurred near downtown Sioux Falls. One of the officers on

the scene, Officer Blades, identified the victim of the beating as Harold Rooney. Shortly thereafter, Rooney was transported to McKennan Hospital in Sioux Falls; Officer Blades was sent to the hospital to pick up Rooney's clothes.

While enroute from the hospital to the police station, Officer Blades observed appellant walking down the street. Officer Blades had previously seen appellant and Rooney together and had also taken appellant in for detoxification on an earlier occasion. After asking appellant some questions about Rooney, Officer Blades took appellant to the Minnehaha County jail at approximately 8:30 p. m. for detoxification purposes because, according to Officer Blades, appellant was intoxicated and had nowhere to go.

Upon arrival at the Public Safety Building, Officer Blades saw what appeared to be possible blood stains on appellant's shirt as he was removing handcuffs from appellant. He then contacted the two detectives who were investigating the Rooney beating. The detectives took appellant to a conference room in the same building, questioned him, and learned that appellant and some others had been drinking with Rooney earlier that day at the location at which Rooney was later found. At about 11:30 p. m., appellant was advised of his *Miranda* rights and voluntarily consented to have some blood withdrawn at a hospital. Appellant was returned to a cell in the Public Safety Building shortly after midnight.

At approximately 9:00 a. m. on August 10, appellant was returned to the conference room, where he was again advised of his *Miranda* rights. Appellant then proceeded to make incriminating statements, whereupon he was arrested and charged with aggravated assault.

The trial court suppressed the statements made by appellant at the Public Safety Building the night of August 9, but held that all other statements were admissible.

Appellant contends that the statements he made to Sioux Falls Police Officers on August 10 are inadmissible because they were the result of custodial interrogation based upon less than probable cause for arrest. The State, conceding that probable cause to arrest appellant did not exist until approximately 9:30 a. m. on August 10, contends that appellant was properly taken into protective custody for detoxification and therefore was not illegally seized. The State further argues that even if appellant was illegally seized or detained, the detention was so slight an intrusion that it does not justify exclusion of appellant's statements.

The trial court found that Officer Blades took appellant into custody for the purpose of detoxification and concluded that appellant was stopped because he was intoxicated and not because he was a suspect. The trial court held that appellant was legally being held for purposes of detoxification and not on any criminal charges. I cannot say that this finding is clearly erroneous. SDCL 15–6–52(a). There was sufficient evidence that appellant was intoxicated. Moreover, Officer Blades had previously taken appellant into protective custody for detoxification. Also, the record fails to show bad faith on the part of the officer in taking appellant into protective custody. Cf. *Klingler v. United States*, 409 F.2d 299 (8th Cir. 1969). I would emphasize, however, that I do not mean to suggest that this Court would sanction the use of the protective custody procedure as a pretext for questioning a suspect in a criminal matter.

There remains the question whether appellant was held in violation of his fourth amendment rights following the expiration of the detoxification process.

According to the record, the normal detoxification stay is eight to ten hours. Officer Blades testified that appellant was an average detoxification subject. Inasmuch as appellant was taken into protective custody at 8:30 p. m. on August 9, the police were justified in keeping him in protective custody until approximately 6:30 a. m. on August 10. Appellant was, in effect, "seized" in violation of his fourth amendment rights upon his continued detention following the period of detoxification.

It must be determined, then, whether the illegal detention requires the suppression of the incriminating statements appellant made on the morning of August 10. In resolving this question, we must apply the principles set forth in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); and *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

As stated by the United States Supreme Court in *Brown*:

The question whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances ... and, particularly, the purpose and flagrancy of the official misconduct are all relevant.... The voluntariness of the statement is a threshold requirement.... And the burden of showing admissibility rests, of course, on the prosecution.

422 U.S. at 603–04, 95 S.Ct. at 2261–62, 45 L.Ed.2d at 427 (footnotes omitted).

In *Brown*, the Court noted that the defendant's statement was separated from his illegal arrest by a period of less than two hours, during which there was no intervening event of any significance. The Court also emphasized the purposefulness of the action of the arresting officers in taking the defendant into custody under circumstances that were calculated to cause surprise, fright, and confusion. Similar factors were present in *Dunaway*.

After weighing the facts in the instant case in the light of the factors set forth in *Brown*, I would hold that appellant's August 10 statements were properly admitted by the trial court.

First, appellant was advised of his *Miranda* rights immediately prior to making the incriminating statements on the morning of August 10, this after receiving them late the preceding night. See *Rawlings v. Kentucky*, supra, 448 U.S. at 106, 100 S.Ct. at 2562, 65 L.Ed.2d at 633.

The second factor—the temporal proximity of the arrest and the confession—presents a closer question. As indicated above, the period of appellant's illegal detention began at the time he should have been released following the expiration of the normal period of detoxification. At the most, then, appellant had been illegally detained for a period of two and one-half hours when he made his incriminating statements. Applying the analysis followed by the Supreme Court in *Rawlings*, where the period of illegal detention was approximately forty-five minutes, one must look to the circumstances surrounding appellant's detention. Unlike the situation in *Brown*, appellant was not forcibly taken into custody on the evening of August 9 at the point of a gun; he was acquainted with Officer Blades and in fact had been taken into protective custody for detoxification before by Officer Blades. The transition from the period of lawful custody to illegal detention was marked by no show of force or police intimidation. Indeed, it is only through the computation of the expiration of the period of lawful custody for detoxification purposes that it can be said that appellant was ever unlawfully detained. Given these facts, I conclude that, in the words of the United States Supreme Court, "these circumstances outweigh the relatively short period of time that elapsed between the initiation of the detention and [appellant's] admissions." *Rawlings v. Kentucky*, supra, 448 U.S. at 108, 100 S.Ct. at 2563, 65 L.Ed.2d at 644.

Turning to the third factor—the presence of intervening circumstances between the unlawful detention and the challenged statements—the record reveals the occurrence of no event of significance between

the time the lawful custody ended and the incriminating statements were made. This fact is not determinative, however, in view of the totality of the circumstances surrounding appellant's initial detention on the streets of Sioux Falls on the evening of August 9 and the questioning that occurred some twelve and one-half hours later. When taken into custody in the evening, appellant was intoxicated; when questioned in the morning, he was sober. Because the line that separated the period of lawful custody from the period of illegal detention was not characterized by an overt, clear-cut, easily recognizable exercise of official police action, I am loath to say that the absence of any similarly overt, clear-cut, easily recognizable intervening act during the two and one-half hour period of unlawful detention renders appellant's otherwise voluntary statements inadmissible. I look upon the facts of this case as being far different from those in *Brown, Dunaway,* and *Rawlings,* insofar as in those cases there was a bright line, as it were, marking the start of the illegal detention. Suffice it to say, then, that the absence of any event of significance during the period from 6:30 to 9:00 on the morning of August 10 does not by itself render appellant's statements inadmissible.

Finally, we have in the case before us none of the purposeful, flagrant police misconduct that the Court found so offensive in the *Brown* and *Dunaway* cases. As I have already indicated, the trial court's finding that appellant was taken into custody on the evening of August 9 for the purpose of detoxification is not clearly erroneous. Although appellant should have been released at the expiration of the normal period of detoxification, I conclude that "the conduct of the police here does not rise to the level of conscious or flagrant misconduct requiring prophylactic exclusion of petitioner's statements." *Rawlings v. Kentucky,* supra, 448 U.S. at 110, 100 S.Ct. at 2564, 65 L.Ed.2d at 645.

I conclude, therefore, that appellant's statements were acts of free will unaffected by his unlawful detention and were thus properly held to be admissible.

I am authorized to state that Justice FOSHEIM joins in this dissent.