# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3071

_____

United States of America,                    *
                                             *
        Plaintiff-Appellee,          *
                                             *    Appeal from the United States
    v.                                       *    District Court for the
                                             *    Southern District of Iowa.
Bryan Lee Simpson,                           *
                                             *
        Defendant-Appellant.         *

_____

Submitted: January 12, 2006
Filed: February 27, 2006

_____

Before WOLLMAN, LAY, and ARNOLD, Circuit Judges.

_____

LAY, Circuit Judge.

## I.  BACKGROUND

In the morning hours of January 21, 2004, Des Moines Police Officers Tim Morgan and Jeff Cronin were on patrol in an unmarked, white Pontiac Grand Am. Both officers wore jeans and winter jackets. During the course of their patrol, the officers drove by an apartment complex in Des Moines, Iowa, in an area known for drug trafficking. As the officers drove into the complex, they spotted a pedestrian. Officer Morgan believed the pedestrian was Jerome Shade, a man he knew from a prior arrest. Officer Cronin did not know Shade by sight. However, because there was an outstanding warrant for Shade's arrest, Officer Cronin was equipped with a

photograph of Shade and a written report describing his physical characteristics. As the officers' car approached the suspect, Officer Morgan told Officer Cronin he believed the man was, in fact, Shade.

The suspect wore a stocking cap and a bulky winter jacket. The officers initially spotted him from approximately thirty to forty yards away. As the officers drew closer, the suspect placed his hand beside his face, obstructing the officers' view. As the car passed, Officer Morgan slowed the car to approximately ten miles per hour and watched, from the rear view mirror, as the suspect paid close attention to the car. The distance between the car and the suspect was approximately twenty to thirty feet.

Once the car passed, the suspect began to walk more rapidly and eventually broke into a run around one of the nearby apartment buildings. In response, Officer Morgan stopped the car and began to pursue the suspect on foot. During the chase, Officer Morgan radioed back to police dispatch to inform other officers of the status of his pursuit. At no time during the chase did Officer Morgan communicate directly with Officer Cronin.

During the chase, Officer Morgan twice identified himself as a police officer, but was unsure whether the suspect could hear him. As the suspect was fleeing, he removed his coat and stocking cap, and Officer Morgan immediately realized he was not Shade. Shade stands six feet, two inches and weighs approximately 210 pounds. Simpson, by contrast, is five feet, six inches and weighs approximately 150 pounds.

Despite this realization, Officer Morgan continued to chase the suspect because he believed the man knew he and Officer Cronin were police officers and, as a result, had intentionally concealed his identity and taken flight to evade them. The chase ultimately ended after two or three blocks when Officer Cronin, pursuing the suspect from the opposite direction, cut the suspect off and announced he was a police officer. Officer Cronin attempted to arrest the suspect, but he resisted. Officer Cronin then

forced the suspect to the ground and subdued him with the help of other officers who had, by now, arrived on the scene. Officer Cronin was unaware the person he chased down was not Shade.

Shortly after the suspect's arrest, the officers identified him as Bryan Simpson and discovered an outstanding warrant for his arrest. While officers verified Simpson's identity, Officer Morgan and others retraced the chase route and discovered two magazines containing ammunition and an assault rifle on the ground. The officers then searched Simpson's person and recovered three bullets. These bullets matched the ammunition found in the two magazines recovered by police.

Approximately two hours after his arrest, authorities read Simpson his <u>Miranda</u> rights. Simpson also signed a <u>Miranda</u> waiver. Police then interrogated him for approximately one hour, during which time Simpson told officers they would likely find his prints on the rifle. Simpson also identified the man who sold him the rifle. At no time during the interview did Simpson ask for an attorney.

Simpson was subsequently charged as a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Simpson moved to suppress admission of his post-arrest statements. The district court[1] denied Simpson's motion even though it ruled his initial seizure violated the Fourth Amendment. Simpson subsequently filed a motion in limine to exclude admission of the rifle, the two magazines, and the three bullets. This motion was also denied.

On March 9, 2005, Simpson entered a conditional plea of guilty to being a felon in possession of a firearm, reserving the right to appeal the district court's rulings on his motion to suppress and motion in limine. Simpson now appeals each of these

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

rulings. Simpson also appeals the district court's sentence, alleging it violates his Sixth Amendment right to a trial by jury.

## II. DISCUSSION

### A.      Admissibility of the Rifle and Magazine Clips

Simpson first argues the rifle and magazine clips recovered on the ground by the officers are inadmissible under the Fourth Amendment as fruit of the poisonous tree. We review the district court's Fourth Amendment rulings de novo. United States v. Brown, 49 F.3d 1346, 1348-49 (8th Cir. 1995).

"Under the 'fruit of the poisonous tree' doctrine, the exclusionary rule bars the admission of physical evidence and live witness testimony obtained directly or indirectly through the exploitation of police illegality." Hamilton v. Nix, 809 F.2d 463, 465 (8th Cir. 1987) (citing Wong Sun v. United States, 371 U.S. 471, 484-88 (1963)). The district court ruled, and the government does not dispute, that law enforcement had neither probable cause nor reasonable suspicion to seize Simpson. We will therefore assume, without deciding, that Simpson's initial seizure was unconstitutional. Given this background, we must now address whether the rifle and magazines recovered on the ground after Simpson's seizure were obtained through an improper exploitation of the initial police illegality.

Simpson concedes he was first seized, for purposes of the Fourth Amendment, when Officer Cronin tackled him. Simpson's chase by law enforcement was, in all respects, lawful, and his relinquishment of the rifle and magazines was an act preceding the police illegality. See California v. Hodari D., 499 U.S. 621, 629 (1991) (holding that pursuit by law enforcement, even where law enforcement makes a "show of authority," does not constitute a Fourth Amendment "seizure"). The mere fact that police recovered the rifle and magazines after Simpson's unlawful seizure does not

render this evidence inadmissible. Had authorities not arrested Simpson, they would have been free to retrace the search route and recover any and all evidence they encountered on the way. Evidence recovered under these circumstances is ordinarily admissible. See United States v. Liu, 180 F.3d 957, 962 (8th Cir. 1999). Simpson's unlawful seizure does not change the fact that he relinquished control over the rifle and magazines prior to any police misconduct. We therefore reject Simpson's fruit of the poisonous tree argument because the rifle and magazines were obtained through conduct that preceded the police illegality. Instead, the more relevant inquiry is whether Simpson abandoned the rifle and magazines such that they may be properly admitted as evidence.

We review a district court's abandonment rulings for clear error. United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994). Generally, abandoned property may be recovered by police and used for evidentiary purposes. See Hester v. United States, 265 U.S. 57, 58 (1924); United States v. Hollman, 541 F.2d 196, 199 n.8 (8th Cir. 1976). When determining if evidence has been abandoned, courts must consider whether the defendant relinquished his reasonable expectation of privacy over the objects. See United States v. Hoey, 983 F.2d 890, 892-93 (8th Cir. 1993). This determination is made based on the objective facts available to the officers at the time they recovered the evidence, taking into account the totality of the circumstances. United States v. Tugwell, 125 F.3d 600, 602 (8th Cir. 1997). Under this test, courts typically consider two critical factors – whether the defendant physically relinquished, and denied ownership over, the challenged evidence. Id.

Here, Simpson threw the rifle and magazines on the ground while being chased by police. This act suffices to establish the evidence was physically relinquished. Further, the district court found, and we agree, that at the time Simpson discarded the rifle and magazines, he was attempting to disclaim ownership over this evidence so authorities could not trace the objects back to him. Therefore, we conclude the district

court did not clearly err when it found that Simpson abandoned the rifle and magazines and, as such, this evidence is admissible.

## B.    Admissibility of the Bullets and Simpson's Post-Arrest Statements

Simpson alleges the three bullets recovered from his person, as well as the statements he made to police some two hours after discovery of his outstanding arrest warrant, are inadmissible as fruit of the poisonous tree. We review these claims de novo. Brown, 49 F.3d at 1348-49.

Although the United States Supreme Court has refused to adopt a per se, or "but for," rule that would make inadmissible any evidence, whether tangible or live-witness testimony, where such evidence is obtained through a chain of causation that began with an illegal arrest, United States v. Ceccolini, 435 U.S. 268, 276 (1978), we note, once again, the familiar precept that "the indirect fruits of an illegal search or arrest should be suppressed when they bear a sufficiently close relationship to the underlying illegality." New York v. Harris, 495 U.S. 14, 19 (1990). Nevertheless, evidence obtained under these circumstances may be admissible if "the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the 'taint' imposed upon that evidence by the original illegality." United States v. Crews, 445 U.S. 463, 470 (1980).[2]

In this case, Simpson's initial seizure violated the Fourth Amendment. The three bullets and his post-arrest statements were obtained, respectively, after police discovered the outstanding warrant for his arrest. The only question is whether there was sufficient attenuation to dissipate the taint of Simpson's unlawful seizure such

---

[2]The Supreme Court has also recognized two additional exceptions to the exclusionary rule – the "independent source" and "inevitable discovery" doctrines, neither of which is applicable to the facts of this case. See Hamilton, 809 F.2d at 465-66.

that the bullets and his post-arrest statements are admissible. When determining if sufficient attenuation exists, we must focus on three specific factors: (1) the time elapsed between the illegality and acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. Brown v. Illinois, 422 U.S. 590, 603-04 (1975).

In instances where the intervening circumstance is the discovery of an outstanding arrest warrant, courts have held the first factor – the time elapsed between the initial illegality and the acquisition of the evidence – is less relevant because the intervening circumstance is not a voluntary act by the defendant. See United States v. Green, 111 F.3d 515, 522 (7th Cir. 1997). In these cases, there is "no chance that the police have exploited an illegal arrest by creating a situation in which [the] criminal response is predictable." Id. (internal citations omitted).[3] Here, the intervening circumstance is an arrest warrant, not a voluntary act by Simpson. Therefore, our review need not focus on the first Brown factor. Instead, the appropriate analysis must consider the nature of the intervening circumstance and the purpose and flagrancy of the official misconduct.

Where the discovery of an arrest warrant constitutes the intervening circumstance, "it is an even more compelling case for the conclusion that the taint of the original illegality is dissipated." Id. Accordingly, we rule Simpson's outstanding arrest warrant constitutes an extraordinary intervening circumstance that purges much of the taint associated with the officers' unconstitutional conduct.

---

[3]However, in cases where, for example, the defendant consents to a search, the time between the initial illegality and the defendant's consent is critical because the closer this period, the more likely the defendant's consent was influenced by, or the product of, the police misconduct. Brown, 111 F.3d at 522. Evidence recovered under these circumstances is ordinarily considered tainted and therefore inadmissible. E.g., United States v. Patino, 830 F.2d 1413, 1419 (7th Cir. 1987).

The final issue is whether Officers Morgan and Cronin acted purposefully and flagrantly to violate Simpson's Fourth Amendment rights. The purpose and flagrancy of the official misconduct is considered the most important factor because it is directly tied to the purpose of the exclusionary rule – deterring police misconduct. <u>United States v. Reed</u>, 349 F.3d 457, 464-65 (7th Cir. 2003). Application of the exclusionary rule, however, "does not serve this deterrent function when the police action, although erroneous, was not undertaken in an effort to benefit the police at the expense of the suspect's protected rights." <u>United States v. Fazio</u>, 914 F.2d 950, 958 (7th Cir. 1990).

Courts have found purposeful and flagrant conduct where: (1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his conduct was likely unconstitutional but engaged in it nevertheless; and (2) the misconduct was investigatory in design and purpose and executed "in the hope that something might turn up." <u>Brown</u>, 422 U.S. at 605; <u>see</u> <u>also</u> <u>United States v. Cantu</u>, 230 F.3d 148, 160 (5th Cir. 2000); <u>United States v. Causey</u>, 818 F.2d 354, 358-59 (5th Cir. 1987).

Simpson alleges Officers Morgan and Cronin acted purposefully and flagrantly because no reasonable officer would confuse him with Shade in light of the dramatic physical disparities between the two men. However, there is no evidence that either officer acted with the knowledge his conduct was likely unconstitutional, illegal, or improper. Instead, the facts demonstrate Officer Cronin believed, albeit erroneously, that Simpson was Shade when he tackled and arrested him. Similarly, Officer Morgan continued in pursuit even after realizing the suspect was not Shade under the belief the suspect was intentionally trying to evade police. We note that law enforcement may conduct an investigative stop when a suspect flees from the police without provocation, and where the area in question is known for heavy narcotics trafficking. <u>Illinois v. Wardlow</u>, 528 U.S. 119, 124-25 (2000). In this case, however, the district court found, and we will assume for purposes of this appeal, that there was insufficient suspicion to justify an investigative stop based, in part, on the lack of physical

similarities between Shade and Simpson. Yet the officers' unreasonable mistake of fact on this point does not constitute the type of blatantly unconstitutional or flagrant behavior condemned in <u>Brown</u>.

Moreover, there is no indication Officers Cronin and Morgan pursued Simpson in a purposeful effort to gather evidence against him. Instead, both officers initially pursued Simpson under the belief he was Shade. <u>See</u> <u>Green</u>, 111 F.3d at 523 (noting officers were not engaged in an effort to gather evidence against the defendant where they believed the defendant was another person). Even though Officer Morgan realized the man he was chasing was not Shade, neither Morgan, nor any other officer, exploited Simpson's unconstitutional seizure. The three bullets and Simpson's subsequent inculpatory statements were obtained only <u>after</u> discovery of the outstanding warrant for his arrest, which itself provided officers with independent grounds to search and question him.

Therefore, we rule the three bullets recovered from Simpson's person, as well as his post-arrest statements, were not obtained through an improper exploitation of his arrest and, as such, this evidence is admissible.

## C.    Constitutionality of the District Court's Sentence

Finally, Simpson alleges the district court violated his Sixth Amendment rights when it found, independent of a jury, that he had been convicted of two prior felonies. This finding, taken in conjunction with Simpson's conviction under 18 U.S.C. §§ 922(g)(1) and 924(e)(1), rendered him eligible for sentencing as an armed career criminal under United States Sentencing Guidelines § 4B1.4.

However, "the fact of prior conviction is for the court to determine, not a jury." <u>United States v. Nolan</u>, 397 F.3d 665, 667 n.2 (8th Cir. 2005); <u>see also</u> <u>United States v. Booker</u>, 543 U.S. 220, ___; 125 S. Ct. 738, 756 (2005) ("Any fact (other than prior

conviction) which is necessary to support a sentence exceeding the maximum . . . must be admitted by the defendant or proved to a jury beyond a reasonable doubt."). Therefore, the district court's sentence was proper.

### III.  CONCLUSION

For the foregoing reasons, we affirm each of the district court's challenged rulings.

_____