IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. ALLEN


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

MAXWELL J. ALLEN, APPELLANT.


Filed July 12, 2022.    No. A-21-749.


Appeal from the District Court for Frontier County: JAMES E. DOYLE IV, Judge. Affirmed.

Jerad A. Murphy, of Bruner, Frank, Schumacher & Husak, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.


MOORE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Maxwell J. Allen pled no contest to two criminal counts of knowingly or intentionally manufacturing, distributing, delivering, dispensing, or possessing with intent to manufacture, distribute, deliver, or dispense a controlled substance in violation of Neb. Rev. Stat. § 28-416(1) (Cum. Supp. 2018). One count involved cocaine and the other fentanyl. The Frontier County District Court sentenced Allen to 25 to 30 years' imprisonment (cocaine count) and 30 to 40 years' imprisonment (fentanyl count); sentences to run concurrently. Allen claims that his sentences were excessive and that he received ineffective assistance of trial counsel. We affirm.

## II. BACKGROUND

On June 16, 2020, a young woman, J.S., was found dead in her bed by a friend, Gabriella C., who stopped by in the early morning to make sure J.S. was awake for a scheduled class. Gabriella left J.S.' residence earlier that morning, at about 1 a.m., because J.S. told her a male

friend was coming over. Gabriella knew that J.S. had purchased Adderall and cocaine from that male friend in the past, and that he and J.S. had used cocaine together. J.S. asked Gabriella to call her in the morning to make sure she was awake because of her class. When Gabriella attempted to call J.S., starting at about 6:05 a.m., J.S. did not answer, so Gabriella went to J.S.' residence at approximately 7 a.m. Upon arrival, she saw J.S. lying in bed next to Allen. Gabriella attempted to awaken J.S., but after rolling her over, she saw that J.S. was "blue and not breathing," and she called 9-1-1. Gabriella also observed a plastic bag with a "single round, green pill" and another bag with "several round, light green pills" on the bed near J.S. After Gabriella called for help, she saw Allen grab a brown box that she knew had cocaine in it and she saw him run outside to his vehicle. When asked about the brown box, Allen told a deputy that it was in the trunk of his vehicle, and when asked, he consented to a search of the vehicle. The deputy located the box which contained a watch, a digital scale, a lighter, numerous "small Ziploc bags," and a "Ziplock bag containing a white powdery substance" which field and lab tested positive for cocaine. Following that search, the deputy also searched J.S.' home and located a phone and laptop. A search warrant was obtained for Allen's cell phone, which produced evidence of several discussions Allen had regarding the distribution of light green pills tabbed with "M 30." Lab reports showed that the light green pills marked with "M 30" tested positive for Fentanyl, cocaine, and methylphenidate. An autopsy of J.S. revealed Fentanyl in her system.

On August 21, 2020, the State filed an information charging Allen with: count I, knowingly or intentionally manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance, cocaine, a Class IIA felony, pursuant to Neb. Rev. Stat. § 28-416(1) (Cum. Supp. 2018); count II, possession of cocaine, a Class IV felony, pursuant to § 28-416(3); count III, possession of oxycodone, a Class IV felony, pursuant to § 28-416(3); count IV, possession of hydrocodone, a Class IV felony, pursuant to § 28-416(3); count V, possession of amphetamine, a Class IV felony, pursuant to § 28-416(3); count VI, possession of money used or intended to be used to facilitate a violation of § 28-416(1), a Class IV felony, pursuant to § 28-416(17); and count VII, possession of cocaine without payment of the tax required by Neb. Rev. Stat. § 77-4303 (Reissue 2016), a Class IV felony, pursuant to Neb. Rev. Stat. § 77-4302 (Reissue 2016).

On April 8, 2021, the State filed an amended information charging Allen with: count I, knowingly or intentionally manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance, cocaine, an exceptionally hazardous drug, a Class II felony, pursuant to § 28-416(1); count II, knowingly or intentionally manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance, fentanyl, an exceptionally hazardous drug, a Class II felony, pursuant to § 28-416(1); count III, possession of hydrocodone, a Class IV felony, pursuant to § 28-416(3); count IV, possession of methylphenidate, a Class IV felony, in violation of § 28-416(3); count V, possession of money used or intended to be used to facilitate a violation of § 28-416(1), pursuant to § 28-416(17); and count VI, possession of cocaine without payment of the tax required by § 77-4303, a Class IV felony, pursuant to § 77-4302.

A preliminary hearing was held on May 13, 2021, on counts I, II, and IV of the amended information. After taking the matter under advisement, the district court found the State had shown probable cause that the crimes alleged were committed by Allen.

During a hearing held on July 12, 2021, the parties indicated that a plea agreement had been reached in this case. According to the parties, the State would dismiss counts III through VI in the amended information if Allen pled guilty or no contest to counts I and II. After the district court advised him of his constitutional rights and the consequences of entering a plea of guilty or no contest, Allen pled no contest to counts I and II. According to the factual basis provided by the State:

On June 16, 2020, at approximately 7:16 a.m., the Frontier County Sheriff's Department received a 9-1-1 call from a female identified as [Gabriella].

[Gabriella] told dispatch that an ambulance was needed for an unresponsive 22-year-old female who was not breathing and blue, at [street address] in Curtis, Frontier County, Nebraska.

A deputy with the Frontier County Sheriff's department arrived, in uniform, driving a fully marked patrol vehicle at 7:30 a.m.

Upon the deputy's arrival, the deputy made contact with several EMTs who stated that there was a deceased female in the home at [street address].

The deputy observed a male subject sitting on the front porch of the residence. The EMTs took the deputy to where the female was located, and the female was laying [sic] in a bed, on her back, in the bedroom located in the southwest corner of the residence.

When the deputy approached the female, the deputy observed obvious signs of death, that were lividity and rigor mortis, that had been setting in.

The deputy identified the female as [J.S.] form [sic] previous contacts that the deputy had with [J.S.]

[J.S.] was laying [sic] on the near side of the bed, closest to the door, on her back, and there had been blood pooling in the lower portions of her arms and on the exposed skin area of her back and legs.

Laying next to [J.S.] in the bed [were] two small Ziploc bags, and inside of each bag were pills. In the Ziploc bags, one contained a single round, green pill, and the other Ziploc bag contained several small, round, blue – light blue or light green pills.

The deputy, then, went outside the residence to speak with [Gabriella] about what had occurred, as she had found [J.S.]

[Gabriella] stated that she was at [J.S.'] residence the night before and had left at approximately 1:00 a.m., on June 16, 2020.

[Gabriella] said that the reason she was leaving was due to [J.S.] telling her that her male friend was coming over, and that [Gabriella] knew that this was the friend that [J.S.] had purchased Adderall and cocaine from in the past. As well, [J.S.] had used cocaine with this friend in the past.

[Gabriella] said that prior to her leaving [J.S.'] residence, [J.S.] asked that [Gabriella] call her in the morning to make sure she was awake because she had class at 7:00 a.m. in the morning.

[Gabriella] said that at approximately 6:05 a.m., she started to call [J.S.] and did not receive a response, which is why she went to her home at approximately 7:00 a.m. and found her laying [sic] in her bed, with a male subject laying [sic] next to her.

[Gabriella] stated that she tried to shake [J.S.], and she was unable to wake up, and rolled her over and found that she was blue and not breathing.

[Gabriella] stated that when she rolled [J.S.] over, she noticed two plastic bags with pills in them, and [Gabriella] stated that one bag contained a single round, green pill, and the other bag contained several round, light green pills.

[Gabriella] said that as soon as she saw [J.S.], she called 9-1-1, and then the deputies approached.

[Gabriella] stated that after she called 9-1-1, she saw the male subject grab a brown box, that [Gabriella] stated she knew had cocaine in it, and saw the male individual run outside to his vehicle.

After speaking with [Gabriella], the deputy made contact with the male subject who was sitting on the front porch of the residence. The male subject identified himself as the defendant, Maxwell J. Allen.

The deputy asked Mr. Allen what had occurred, and Mr. Allen stated that he had gotten to [J.S.'] home at approximately 1:00 a.m.

The deputy asked Mr. Allen about a brown box that might contain cocaine, and Mr. Allen stated that the brown box was in the trunk of his vehicle.

The deputy asked Mr. Allen if he could search his vehicle, and Mr. Allen did consent to such search, and the deputy did conduct a search of the 2018 Chrysler 300.

The deputy conducted the search, and within the vehicle the deputy identified a black billfold that contained approximately $600 in cash.

The deputy searched the trunk of the vehicle [and] found numerous clothing items, a sleeping bag, and . . . a brown box with the words "Louis Vuitton" on such box.

The deputy opened the box, and inside the box was a red and black watch, a red and black digital scale, a light blue lighter, numerous small Ziploc bags, and a Ziploc bag containing a white powdery substance.

The substance did field test positive for cocaine at that time.

After conducting that search, the deputy . . . did search [J.S.'] home, and did locate a phone and laptop.

As a result of this incident, investigators with the Nebraska State Patrol and the FBI did get a search warrant for Mr. Allen's cell phone.

And had the matter gone to trial, the State would have produced evidence that showed several discussions Mr. Allen had regarding the distribution of light green pills tabbed with an "M 30."

The Nebraska State Patrol Crime Lab did test the suspected cocaine, and did identify the white powdery substance as cocaine, weighing 9.33 grams.

And the Nebraska State Patrol Crime Lab tested these six and a half light green pills that were marked with a M and a 30, and those pills did test positive for Fentanyl, cocaine, methylphenidate. Such pills were found in [J.S.'] bed where Mr. Allen and [J.S.] were found.

In addition to an autopsy being completed on [J.S.], there was also a toxicology test ordered, and such toxicology did show that [J.S.] did have Fentanyl in her system.

And these events all occurred in Frontier County, Nebraska.

The district court accepted Allen's no contest pleas to the charges in the amended information and found him guilty of the same. The case was set for sentencing.

After a hearing held on August 18, 2021, the district court sentenced Allen to concurrent sentences of 25 to 30 years' imprisonment (count I, cocaine) and 30 to 40 years' imprisonment (count II, fentanyl). Allen was given 375 days' credit for time served.

Allen appeals.

## III. ASSIGNMENTS OF ERROR

Allen claims, reordered, that his sentences were excessive and that he received ineffective assistance of counsel when his trial counsel failed to (1) object to the factual basis presented by the State, (2) file multiple necessary pretrial motions, (3) appropriately advise Allen of the possible "sentence range," and (4) allow Allen the opportunity to review the presentence investigation report.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

Allen was convicted of two counts, one involving cocaine and the other fentanyl, of "knowingly or intentionally . . . manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance" in violation of § 28-416(1), each a Class II felony due to cocaine and fentanyl being classified as exceptionally hazardous drugs. See § 28-416(2)(a) (violation of § 28-416(1) involving controlled substance classified in Schedule II of Neb. Rev. Stat. § 28-405 (Cum. Supp. 2020) which is "exceptionally hazardous drug" constitutes Class II felony). A Class II felony is punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). Allen was sentenced to concurrent sentences of 25 to 30 years' imprisonment (count I, cocaine) and 30 to 40 years' imprisonment (count II, fentanyl); his sentences are within the statutory range.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Lierman, supra*. The appropriateness of a sentence is necessarily a subjective judgment and

includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Allen was 24 years old at the time of sentencing. He has some juvenile history which we will not recount here. His prior adult criminal history includes convictions for: "Criminal Trespass" in 2015 (probation revoked; 180 days in jail); "Theft by Unlawful Taking" in 2015 (probation revoked; 90 days in jail); "Criminal Mischief" in 2015 (probation revoked; 30 days in jail); "Criminal Mischief" in 2016 ($250 fine and $1,410 restitution); "Minor in Possession" in 2016 (probation revoked; 4 days in jail); "Assault-3rd Degree" in 2017 (60 days in jail); "Possession of Marijuana" in 2019 ($300 fine); and "Possess or Use Drug Paraphernalia" in 2019 ($100 fine). Allen also has convictions for multiple traffic offenses.

The probation officer conducted a "Level of Service/Case Management Inventory" as part of the presentence investigation report (PSR). Allen was assessed as a "High Risk" to reoffend. He scored "High Risk" in the criminogenic risk factor domains for criminal history, family/marital, leisure/recreation, and procriminal attitude/orientation. He scored "Medium Risk" in the domains for companions and alcohol/drug problem. He scored "Low Risk" in the domain for antisocial pattern and "Very Low Risk" in the domain for education/employment.

At the sentencing hearing, Allen's counsel emphasized that J.S.' death was "something no one intended." Counsel acknowledged that Allen "did bring drugs with him that evening" to J.S.' home, but asserted that it would be "erroneous" to effectively punish Allen for the death of J.S. He also asked the district court to "take into consideration" Allen's young age. He requested the court impose concurrent sentences against Allen due to the charges constituting part of the same act.

Allen did not give an oral statement at the hearing, but instead deferred to his written statement in the PSR. In his statement, Allen described that he was unaware of any pills in the home or that J.S. had taken pills that night. He emphasized that he fully complied with police during the investigation and expressed that the events culminating in J.S.' death were "tragic." He further stated that he accepted the plea deal because his trial counsel "advised [him] that it was in [his] best interest."

The district court stated that it had considered the relevant sentencing factors in determining the appropriate sentence to impose. The court found that Allen was not a fit candidate for probation, as probation "would depreciate the very serious nature of this crime and promote disrespect for the law." The court then sentenced Allen as previously set forth.

In his brief on appeal, Allen claims that the district court abused its discretion by failing to properly consider the sentencing factors. Allen describes that his young age provides "a significant amount of time . . . to adjust and change his behaviors to be a more productive member of society." Brief for appellant at 13. He further emphasizes his compliance with law enforcement and his desire to change his circumstances for the better. He also argues that the court misconstrued his criminal history and failed to properly account for his drug addiction. Allen further contends that the State "incorrectly and dangerously blamed" J.S.' death on him during the course of the sentencing hearing. *Id.* at 14.

We have reviewed the relevant sentencing factors in this case. While the sentences imposed in this case were severe, we cannot say the district court abused its discretion. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances, and the sentencing

court is accorded very wide discretion in imposing a sentence. See *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017). The controlled substances involved in this case constituted "exceptionally dangerous" substances as defined by Nebraska law, and we conclude that the district court acted within its discretion when accounting for the seriousness of the controlled substances found at the scene. Accordingly, we find that Allen's sentences were not excessive.

### 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Allen alleges four claims of ineffective assistance of trial counsel. Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel.

Allen has different counsel on direct appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *Id.* Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *State v. Lierman, supra*. A record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

To prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient, and that this deficient performance actually prejudiced the defendant's defense. See, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Blaha, supra*. In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement of an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id.* The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra*.

With these principles in mind, we proceed to examine Allen's four ineffective assistance of trial counsel claims.

### (a) Failure to Object to Factual Basis

Allen claims that his trial counsel was ineffective for failing to object to the factual basis for the plea. He asserts that "the facts given during the factual basis [were] not sufficient to show that [he] distributed a controlled substance for either count." Brief for appellant at 9. With respect to the charge concerning fentanyl, Allen argues that the factual basis must have included facts that Allen "had possession of those M-30 pills [containing fentanyl], knew they contained fentanyl, and then gave them to [J.S.]" *Id.* With respect to the charge pertaining to cocaine, Allen argues that the factual basis did not allege that "the cocaine . . . in [his] possession . . . on the date of the

incident[] was ever distributed" to J.S. *Id.* at 10. He claims that Gabriella's statement to police that she knew J.S. had purchased cocaine and Adderall from Allen in the past and the scales, lighter, Ziploc bags, and money discovered in his vehicle "do not show he distributed any cocaine on the day indicated in the information." *Id.*

Allen's argument focuses on the lack of evidence relating to him actually distributing the controlled substances to J.S. However, both counts I and II of the amended information alleged, pursuant to § 28-416(1), that Allen did "knowingly or intentionally manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance." As relevant here, the factual basis needed to establish only that Allen knowingly or intentionally possessed the controlled substances with the intent to distribute, deliver, or dispense them. The factual basis, as set forth above, showed that Allen: was found in the same bed as J.S. and the "M-30" pills; had prior communications regarding "M-30" pills similar to those discovered in J.S.' home; had previously sold cocaine and Adderall to J.S.; and had cocaine, $600 in cash, several Ziploc bags, a lighter, and an electronic scale his vehicle.

Allen claims trial counsel was ineffective for failing to object to the factual basis on the grounds that Allen must have known that the pills contained fentanyl for the element of possession to be satisfied. However, it is not required that a defendant know the precise substance in his or her possession in order to be convicted for possession of a controlled substance; rather, the defendant must simply know that the substance in his or her possession was a controlled substance. See, *State v. Neujahr*, 248 Neb. 965, 973, 540 N.W.2d 566, 572 (1995) ("[T]he State must prove that [defendant] knew the pills he possessed were a controlled substance, not that he knew the pills were clorazepate"); *State v. Lomack*, 4 Neb. App. 465, 486, 545 N.W.2d 455, 469 (1996) ("[I]t was unnecessary for the State to prove that [defendant] knew the substance in the baggie was cocaine" and it "was sufficient for the State to prove that [defendant] knowingly possessed the substance and that he knew of the nature or character of the substance as being a controlled substance"). A person possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion or control over it. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017). Possession can be either actual or constructive, and constructive possession of an illegal substance may be proved by direct or circumstantial evidence. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). Accordingly, Allen could not have been prejudiced by trial counsel's failure to object to the factual basis on this ground, as it was not necessary for the factual basis to demonstrate that he knew the "M-30" pills contained fentanyl. It was apparent from Allen's communications as described in the factual basis that he understood the "M-30" pills to be a controlled substance.

Allen also argues that "[a]t most the State showed that [Allen] may have been in possession of cocaine but did not present any evidence that it was distributed to [J.S.] or anyone else." Brief for appellant at 9. Circumstantial evidence may also support a finding that a defendant intended to distribute, deliver, or dispense a controlled substance in the defendant's possession. *State v. Howard, supra*. Circumstantial evidence sufficient to establish possession of a controlled substance with intent to deliver may consist of evidence of the quantity of the substance, equipment and supplies found with the substance, the place where the substance was found, the manner of packaging, and the testimony of witnesses experienced and knowledgeable in the field. *Id*. The factual basis set forth Allen's communications with J.S. the night prior to her death; J.S.' use of

drugs with Allen, including cocaine, on prior occasions; pills marked "M 30" were found near J.S.' body; Allen's phone revealed discussions about selling "M 30" pills to others; Allen was seen taking a box to his car that contained several grams of cocaine; and baggies, a digital scale, and a large sum of money were found in Allen's car. Such evidence supports an intent to distribute, deliver, or dispense a controlled substance.

We conclude that the factual basis was sufficient to prove all the essential elements for possession of cocaine and fentanyl with intent to distribute, deliver, or dispense in violation of § 28-416(1). Accordingly, Allen could not have been prejudiced by his trial counsel's failure to object to the factual basis on the grounds he alleges on appeal.

(b) Failure to File Pretrial Motions

Allen assigns as error that his trial counsel was ineffective for "failing to file multiple necessary pretrial motions." He argues that the case was pending for 15 months and the "only pretrial motion filed by [trial] counsel was a motion to take depositions, and a motion for discovery." Brief for appellant at 10. Allen claims that "a motion to suppress his statements given at the time that the police arrived at the scene, and a motion to suppress the evidence found in [Allen's] car should have been filed." Id. Allen contends that when he "made the incriminating statements to police and consented to search his vehicle, [Allen's] state of mind was such that he was not able to voluntarily make statements to the police nor could he knowingly and voluntarily consent to the search." Id. He asserts that "the statements obtained by the police at that time were also taken under duress."

Allen does not specify which of his statements were incriminating, how they were taken under duress, nor how any such statements or his consent to search his vehicle could have been successfully challenged with a motion to suppress. He points only to Deputy John Bauer's testimony at the preliminary hearing where he claims Deputy Bauer admitted that Allen "seemed like he had just woke up, confused and admitted to have THC in his system." Brief for appellant at 11. Allen claims that at that point, Deputy Bauer "should have realized that [Allen] was not in any condition to be able to waive any of his constitutional rights and ceased questioning [Allen]." Id. However, Allen does not specify what constitutional rights were waived or otherwise violated. The record demonstrates that Deputy Bauer's initial questioning of Allen did not occur while Allen was in police custody, nor does Allen claim that he was subjected to any threats or coercion from law enforcement at any point in time.

At the preliminary hearing, Deputy Bauer stated that he arrived "on the scene" at approximately 7:35 a.m. on June 16, 2020. He initially observed "a white male subject sitting out on the porch, in a chair." Inside the residence, he observed the "EMTs" just inside the door and then "a female that appeared to have been deceased and had obvious signs of death, that was lying in a bed." He also saw "two baggies of pills, Ziploc baggies of pills laying in the bed with the deceased." He noted that one baggie contained multiple pills that "were greenish or light blue in color" and the other contained "one round green pill." He secured the scene and then spoke with witnesses. He first spoke with Gabriella who conveyed the information previously set forth, including her belief that Allen and J.S. "were both sleeping" when Gabriella first arrived, and that Allen subsequently grabbed a brown box that she knew to contain cocaine, left the residence, and went to his vehicle. Deputy Bauer then went to the front porch and asked Allen "what had

happened or occurred." Allen told Deputy Bauer that he and J.S. had been "drinking whiskey straight from the bottle when he arrived" at approximately 1 a.m. that morning, and "they just hung out for a while and fell asleep in the bed." Deputy Bauer then asked about the brown box that might contain cocaine, and Allen told him that it was in his car. Allen consented to a search of his vehicle. Allen denied knowing anything about the pills that were found in the bed with J.S. and denied having knowledge of J.S. "doing any illicit drugs or pills that night." According to Deputy Bauer, when Allen was sitting on the front porch, "he just seemed like he didn't know – you know, he had just woke up in the bed – got woken up in bed next to a deceased female, and was – I wouldn't say – distraught would not be the word I would use, but confused as to what was going on, and he admitted to me that he did have – would have THC in his system that day[.]"

We find Allen's claim related to trial counsel allegedly being deficient because a motion to suppress statements or evidence seized from the search of the vehicle would have been successful is merely conclusory and without legal support and analysis. He provides only general legal propositions related to consent being given voluntarily, and not as the result of duress or coercion, citing to *State v. Prahin*, 235 Neb. 409, 455 N.W.2d 554 (1990), and that the prosecution has the burden to prove by a preponderance of the evidence that incriminating statements by the accused were voluntarily given and not the product of coercion, citing to *State v. Hernandez*, 299 Neb. 896, 911 N.W.2d 524 (2018). *Prahin* involved a traffic stop where the request to search the defendant's vehicle was made while the defendant was in trooper's vehicle and after the trooper had issued a speeding citation, which was the basis for the traffic stop. Although the defendant in *Prahin* was in police custody when the search was requested and consent was given, the Nebraska Supreme Court affirmed the trial court's determination that the defendant's consent to search the vehicle was voluntarily given, as there was no evidence that the trooper coerced or threatened the defendant to induce him to consent to the search. In *Hernandez,* the defendant claimed that while in police custody, his confession was not voluntarily made because he was still under the influence of methamphetamine. The Nebraska Supreme Court affirmed the trial court's decision to overrule a motion to suppress statements he made in a video interview because there was no evidence of coercion on the part of law enforcement and "'intoxication does not automatically render a confession involuntary.'" *State v. Hernandez*, 299 Neb. at 913, 911 N.W.2d at 540 (quoting *U.S. v. Jones*, 842 F.3d 1077, 1083 (8th Cir. 2016)).

In Allen's case, there was no evidence that Allen was in police custody, much less under any coercion or threats from Deputy Bauer, when Allen spoke with him and gave consent to search his vehicle. As the State points out, "Allen has not provided any argument or support as to why the evidence seized from his vehicle could or should have been suppressed," nor has Allen "mapped out a legal pathway to success had his trial counsel filed that motion." Brief for appellee at 22. As also observed by the State, merely claiming that any statements were made under duress because Allen had just awakened, was confused, and under the influence, is merely a conclusion of fact or law that is not sufficient in demonstrating ineffective assistance of counsel on direct appeal. See *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

We agree that Allen's claim is conclusory in nature and lacks a coherent analytical argument, and therefore, is insufficiently stated. See *State v. Blake, supra*. "Where an appellant's brief contains conclusory assertions unsupported by a coherent analytical argument, the appellant fails to satisfy the requirement that the party asserting the alleged error must both specifically

assign and specifically argue it in the party's initial brief." *Id*. at 800, 969 N.W.2d at 422. "A claim insufficiently stated is no different than a claim not stated at all." *Id*. "[A]bsent is what statements and evidence would have been suppressed had the motion been made, and on what grounds." *Id.* "Counsel is not deficient for failing to file a meritless motion, and we will not search the record to determine the possible grounds for pretrial motions a defendant on direct appeal asserts trial counsel was deficient to make." *Id*.

Allen has failed to allege what incriminating statements were made and what legal authority would support excluding those statements merely because he had just awakened and may have had THC in his system at the time he was initially questioned by Deputy Bauer while sitting on the front porch. Further, at the time Deputy Bauer spoke with Allen, Allen was not yet in police custody, nor was there any evidence whatsoever of any coercion or threats by Deputy Bauer or any other law enforcement officers. Allen also fails to provide any analytical argument as applied to the facts here that would support his claim that his consent to search his vehicle was not given voluntarily. For consent to search to be voluntarily given, it must be a free and unconstrained choice, not the product of a will overborn, and it cannot be given as the result of duress or coercion, whether express, implied, physical, or psychological. See *State v. Bray*, 297 Neb. 916, 902 N.W.2d 98 (2017). Allen does not claim, nor was there any evidence, that law enforcement coerced or in any way threatened Allen to induce him to consent to the search of his vehicle. This claim of ineffective assistance of trial counsel fails.

### (c) Failure to Advise Allen of Possible Sentencing Range

Allen claims that trial counsel was ineffective in failing to "appropriately advise [him] of the possible sentence range." Brief for appellant at 11. He claims that counsel "indicated to him that he would likely only receive time for the 357 days that he had already served," and he would not have entered a plea if counsel had "given him more of an appropriate forecast[] or explained . . . the significant possibility of a lengthy criminal sentence." *Id.*

We find that the record affirmatively refutes Allen's claim. At the plea hearing, the district court expressly informed Allen that counts I and II, both Class II felonies, were each punishable by a maximum of 50 years' imprisonment with a minimum sentence of 1 year's imprisonment and that each sentence could be imposed consecutively. Further, Allen affirmed that other than the plea arrangement reached with the State, no one, including his attorney, had "made any promises to [him] to get [him] to enter" his pleas of no contest. The record affirmatively refutes Allen's claim on appeal, and, accordingly, this claim of ineffective assistance of trial counsel fails.

### (d) Failure to Provide PSR for Allen's Review

Allen further contends that "trial counsel did not allow him to review the [PSR] prior to sentencing." Brief for appellant at 12. He argues that "there were comments in the presentence investigation [that] were misunderstood and misinterpreted," directing this court's attention to statements in the PSR indicating that Allen expressed he did not want probation. *Id.* Allen asserts that he told the probation officer that he "wanted probation and realized probation was something that could help him," and trial counsel's failure to review the PSR with him allowed these incorrect statements to be considered by the district court without correction. *Id.*

Allen's counsel indicated at the sentencing hearing that he had reviewed the PSR and "went over the bases of the report and the recommendations with" Allen. The district court did not directly ask Allen whether he had also reviewed the PSR, but the court did expressly find that Allen was not a "fit candidate for probation." The court stated that in finding Allen to not be a fit candidate, it had considered Allen's "age," "mentality," "social and cultural background," "experiences," "law abiding conduct," and extensive "criminal record." The court also described that it considered the "nature of the offense," the "motivation of the offense," and the "seriousness of the offense." There is nothing in the record indicating that the court relied upon the probation officer's alleged misunderstanding of Allen's statements; rather, the court evaluated the circumstances surrounding Allen's history and background and the circumstances of his present offenses. Accordingly, we find that the record affirmatively refutes Allen's claim on appeal, and this claim of ineffective assistance of trial counsel therefore fails.

## VI. CONCLUSION

For the reasons stated above, we find that Allen's concurrent sentences were not excessive. Accordingly, we affirm Allen's sentences. We further conclude that all of Allen's claims of ineffective assistance of trial counsel fail.

AFFIRMED.